UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Nos. 4:18 CR 409 RWS |
| ) | 4:01 CR 441 RWS-2 |
| CHARLES ANTHONY RUSH-BEY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on the motion by Defendant Charles Anthony Rush-Bey for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Rush-Bey filed motions for release on two separate criminal dockets, 4:18-cr-409-RWS and 4:01-cr-441-RWS-2. Rush-Bey has already completed the 26-month term of incarceration for his supervised release violations, but more than 4 months remain on Rush-Bey's 36-month sentence for two counts of distribution of heroin. Having fully considered the factors set forth in 18 U.S.C. § 3553(a), I find that extraordinary and compelling reasons warrant a reduction of Rush-Bey's sentence to time served and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

I.      **Background**

On November 20, 2018, Rush-Bey pleaded guilty to two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1).  See ECF No. 40, United States v. Rush-Bey, 4:18-cr-409-RWS. Because Rush-Bey was on supervised release for a prior offense at the time, on February 15, 2019, Rush-Bey admitted to violating his supervised release. See ECF No. 1053, United States v. Rush-Bey, 4:01-cr-441-RWS.  Also on February 15, 2019, I sentenced Rush-Bey to 36 months' imprisonment on each of the two counts for distribution of heroin as well as 26 months' imprisonment on the supervised release violation, all to run concurrently.  See ECF No. 58, 4:18-cr-409-RWS; ECF No. 1056, 4:01-cr-441-RWS.  I also imposed a three-year term of supervised release.  See ECF No. 58, 4:18-cr-409-RWS.

Although I was aware of Rush-Bey's underlying health conditions when I sentenced him, I neither evaluated nor considered that the rapid spread of a dangerous virus would trigger a global pandemic during his sentence.  COVID-19 has posed unique difficulties for prison facilities and residential reentry facilities, where social distancing protocols are hard to maintain despite officials' best efforts.  So far, thousands of Federal Bureau of Prisons inmates and hundreds of BOP staff have tested positive for COVID-19, and at least 87 inmates and 1 staff

2

member have died from the virus. See COVID-19 Cases, Fed. Bureau Prisons (June 22, 2020), https://www.bop.gov/coronavirus/.

Dismas House, where Rush-Bey currently resides, houses residents in dorm-style rooms where people sleep fewer than six feet apart.[1] The risk of contracting COVID-19 is especially dire for defendants like Rush-Bey, who has been diagnosed with high blood pressure and obesity, conditions that place him at a greater risk of severe health consequences if he contracts the virus.

## II.   Analysis

18 U.S.C. § 3582(c)(1)(A) sets forth the circumstances in which a court may reduce a previously imposed sentence. The statute provides that, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," a court may reduce the defendant's sentence if it finds, "after considering the factors set forth in section 3553(a)," that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

---

[1] At least two residents have tested positive for COVID-19 at Dismas House previously. See Robert Patrick, *Second Resident at St. Louis Halfway House has Coronavirus*, St. Louis Post Disp., Apr. 8, 2020.

### A.     Exhaustion

In the June 19, 2020 Order denying Rush-Bey's motion for failure to exhaust, I set forth the facts that support my finding that Rush-Bey submitted his request for compassionate release to Warden Sproul on April 26, 2020, and I will not repeat them here. Rush-Bey's current motion was filed after the "lapse of 30 days" from Warden Sproul's receipt of his request, so Rush-Bey has now properly exhausted his administrative remedies. Id.

### B.     **Extraordinary and Compelling Reasons**

The challenges posed by COVID-19 present extraordinary and compelling circumstances for some incarcerated people, especially those with certain underlying health conditions. See, e.g., United States v. Gene Leonard Smith, No. CR07-3038-LTS, 2020 WL 2844222 (N.D. Iowa June 1, 2020) (Strand, J.) (collecting cases and finding, "since the beginning of the COVID-19 pandemic, numerous courts have held that a defendant's health conditions and the presence COVID-19 within BOP facilities constitute extraordinary and compelling reasons for compassionate release"). Rush-Bey has been diagnosed with high blood pressure and obesity. A recent BOP medical record notes Rush-Bey is now prediabetic [ECF No. 68, p. 4]. While I am aware that the scientific community is still in its early stages of understanding the extent of the relationship between various comorbidities and COVID-19, I find credible and persuasive the evidence

4

Rush-Bey cites to show that his diagnoses of high blood pressure and obesity place him at a higher risk of suffering significant health consequences were he to contract COVID-19.  E.g., Erika Edwards, *In Sickest COVID-19 Patients, Underlying Conditions are Common, Large Study Finds*, NBC News, Apr. 22, 2020 (describing supportive "findings[] published in the Journal of the American Medical Association").

I also find that Rush-Bey is more likely to contract COVID-19 in Dismas House, where he is unable to socially distance, than he would be if he were living with his fiancée as contemplated by his "stable and supportive" home plan. [ECF No. 63, p. 4].  I find that Rush-Bey's increased risk of adverse health consequences and the heightened risk he will contract COVID-19 in Dismas House versus his own home plan constitute extraordinary and compelling reasons that, after considering the § 3553(a) factors, warrant a reduction of sentence to time served.

### C.    18 U.S.C. § 3553(a) Factors

When I originally sentenced Rush-Bey to 36 months' imprisonment, I noted that it was a below-guidelines sentence.  While reviewing Rush-Bey's motion for a reduction of sentence, I have again fully considered the § 3553(a) factors.  Based on that review, I find that a sentence of time served is sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing.

5

On one hand, the "nature and circumstances" of Rush-Bey's offenses are serious. § 3553(a)(1); id. (a)(2)(A). Rush-Bey pleaded guilty to two counts of distribution of heroin, and he committed the offenses while on supervised release. However, Rush-Bey has already been transferred from the correctional institution where he was incarcerated to Dismas House, a residential reentry facility. He works at a car wash/tire shop five days a week, and the United States Probation Office for the Eastern District of Missouri will be able to aid him in further vocational development during his term of supervised release. See § 3553(a)(2)(D). Based on Rush-Bey's conduct during his sentence thus far, as well as his successful return to the community, I find that he is not a danger to the safety of any other person or the community. See ECF No. 60, pp. 3-10; 18 U.S.C. § 3142(g); see also United States v. Duke, 932 F.3d 1056, 1063 (8th Cir. 2019) ("a court at resentencing may consider evidence of postsentencing rehabilitation") (citing Pepper v. United States, 562 U.S. 476, 481 (2011)). I am also not concerned that release would carry additional risk of exposing the "public [to] further crimes." § 3553(a)(2)(C). Finally, a reduction of Rush-Bey's sentence to time served will not lead to unwarranted sentencing disparities, and the three-year term of supervised release and the restrictions Rush-Bey faces during his term of supervised release will continue to promote respect for the law and protect the public.

6

### D. Sentencing Commission Policy Statements

Rush-Bey's sentence reduction must also be consistent with "the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission's guidance for § 3582(c)(1)(A) is found at U.S.S.G § 1B1.13. Application Note 1 in the Commentary of § 1B1.13 sets out "extraordinary and compelling reasons" for granting a sentence reduction. However, the Commentary predates the First Step Act of 2018, which amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to directly seek sentence reductions in court. The Commentary tracks the language of the pre-amendment version of the statute, which allowed only the BOP Director to bring a motion for a sentence reduction. As a result, "some of it now clearly contradicts 18 U.S.C. § 3582(c)(1)(A)." See United States v. Cantu, 423 F. Supp. 3d 345, 348 (S.D. Tex. 2019) (noting the incongruity between the First Step Act of 2018 and U.S.S.G. § 1B1.13 cmt. n.4).

Whether § 1B1.13 remains applicable and binding is a matter of active discussion among courts. See United States v. Smith, No. CR07-3038-LTS, 2020 WL 2844222, at *4 (N.D. Iowa June 1, 2020) (citing cases). As written, U.S.S.G.

§ 1B1.13 cmt. n.1(D) provides that "the Director of the Bureau of Prisons" can determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." However, many courts have determined that the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A) should also be read into Commentary Application Note 1(D). I agree with this apparent "majority position," and I conclude that either the Director of the Bureau of Prisons *or* the Court, upon proper motion of the defendant, "can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief." See United States v. Stephenson, No. 3:05-CR-00511, 2020 WL 2566760, at *4 (S.D. Iowa May 21, 2020).

Even if the outdated § 1B1.13 is no longer binding in its entirety, it is a central guide for the Court in evaluating a motion for a reduction of sentence. Pursuant to the guidance of U.S.S.G. § 1B1.13 cmt. n.1(D), and for the extraordinary and compelling reasons set forth in Part II(B) of this Memorandum and Order, I find that the sentence reduction I order here is consistent with the Sentencing Commission's policy statements to the extent they are applicable.

### III.  Conclusion

For the reasons stated in this Memorandum and Order, Defendant Charles Anthony Rush-Bey will be resentenced to a period of incarceration of time served,

and the terms and conditions of supervised release stated in the original judgment shall apply.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Charles Anthony Rush-Bey's motion for a reduction of sentence [72] on docket 4:18-cr-409-RWS is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Charles Anthony Rush-Bey's motion for a reduction of sentence [1071] on docket 4:01-cr-441-RWS-2 is **GRANTED** to the extent it is not moot and is otherwise **DENIED** as moot if BOP calculates Rush-Bey has completed his 26-month sentence for supervised release violations.

**IT IS FURTHER ORDERED** that Defendant Charles Anthony Rush-Bey is hereby sentenced to **time served** in the matter of United States v. Rush-Bey, 4:18-cr-409-RWS.  The Bureau of Prisons is to release him from custody at Dismas House as immediately as is practicable. Upon release, Rush-Bey shall self-quarantine at home for 14 days, except for when he leaves his home for employment approved by the Probation Office.

**IT IS FURTHER ORDERED** that Rush-Bey shall serve a term of three years of supervised release under the original conditions of supervised release in the judgment filed at ECF No. 58 on docket 4:18-cr-409-RWS.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare an amended judgment consistent with this order.

                                                                                                                                         _____
                                                            RODNEY W. SIPPEL
                                                            UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2020.